## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ERIC W. CAIN**                    **NO. 17-1567-JWD-EWD**

**VERSUS**                         **JUDGE JOHN W. deGRAVELLES**

**EXXON MOBIL CORPORATION,**        **MAG. JUDGE ERIN WILDER-**
**BATON ROUGE CHEMICAL PLANT**      **DOOMES**

## RULING AND ORDER

This matter comes before the Court on *Defendant Exxon Mobil Corporation's*[1]
("Defendant" or "Exxon") *Motion for Summary Judgment.* (Doc. 14). Plaintiff, Eric W. Cain
("Plaintiff" or "Cain"), opposed the motion. (Doc. 18). Defendant replied, (Doc. 23), and Plaintiff
submitted a sur-reply. (Doc. 28). Also before the Court is Defendant's Motion to Strike Plaintiff's
Summary Judgment Evidence. (Doc. 24). Plaintiff opposed the motion. (Doc. 29). Defendant
replied. (Doc. 30). The Court has carefully considered the law, the facts in the record, and the
arguments and submissions of the parties and is prepared to rule. For the following reasons,
Defendant's motion for summary judgement is denied. Defendant's motion to strike is granted in
part and denied in part.

## I.     Relevant Factual and Procedural Background

Plaintiff served active duty in the United States Marine Corps from December of 1986 until
January of 2007. (Doc. 1-2, ¶ 3). Around December of 2014, Plaintiff began working with Capitol
Ultrasonics, LLC at Exxon as a Non-Destructive Testing Technician. (Doc. 1-2, ¶ 5). In May of
2015, Plaintiff decided that he wanted to work for Exxon as an Assistant Operator. (Doc. 1-2, ¶

---

[1] Exxon Mobil Corporation states that it was "improperly named as Exxon Mobil Corporation, Baton Rouge Chemical
Plant". (Doc. 14-1, p. 1). The instant Motion for Summary Judgment is brought solely on behalf of Exxon Mobil
Corporation.

6).  When he applied for the position, Plaintiff disclosed his military experience.  (Doc. 14-2, p. 21, ll. 17-23).

In order to work as an Assistant Operator, Plaintiff was required to complete the Basic Operator's Course or "Basic Operator Training" ("BOT").  (Doc. 1-2, ¶ 7; Doc. 14-3, ¶ 7).  After completing the course, Plaintiff was assigned to a unit and a trainer.  (Doc. 1-2, ¶ 8).  On or about July 13, 2015, Plaintiff was assigned to the Oxidation Unit and to his trainer, David Mobile.  (Doc. 1-2, ¶ 9).  Plaintiff claims that once it was disclosed that he served in the United States Armed Services, Mobile began accusing Plaintiff of suffering from Post-Traumatic Stress Disorder ("PTSD").  (Doc. 1-2, ¶ 12).  Plaintiff avers that "Mobile singlehandedly initiated and circulated the unsupported allegation that [he] suffered from PTSD, a psychiatric condition, throughout the workplace".  (Doc. 1-2, ¶ 13).  Mobile allegedly told co-workers that Plaintiff "may freak out on the unit at any time".  (Doc. 1-2, ¶ 14).  Additionally, Mobile allegedly recorded his thoughts and concerns about Plaintiff in notes, including concerns about Plaintiff's ability to perform work tasks and that Plaintiff's PTSD "drew a red flag" for Mobile.  (Doc. 1-2, ¶ 15).  Due to these concerns and his military service, Plaintiff claims that he was subjected to a "pattern of disparate and discriminatory treatment that resulted in [his] wrongful termination".  (Doc. 1-2, ¶ 16).

Defendant contends that over the course of his training, Plaintiff was evaluated.  Mobile observed that Plaintiff had difficulty retaining information.  (Doc. 14-6, pp. 50-51).  Plaintiff jokingly attributed his memory issues to "the medicine that [he] took in the war".  (Doc. 14-2, p. 51).  Defendant claims that Plaintiff attributed the medicine to PTSD, (Doc. 14-6, pp. 59-60); Plaintiff admits that he made a joke about his memory, but avers that he never mentioned PTSD.  (Doc. 14-2, pp. 51-53).  Due to this, Mobile was concerned, and he admits that he documented the events and comments and that he reported this to his supervisors.  (Doc. 14-6, pp. 56-61).

Plaintiff further details that Defendant failed to provide him with an adequate training, leaving him alone for four weeks to "train himself". (Doc. 1-2, ¶¶ 17-22). Plaintiff alleges that Mobile then evaluated him and reported that Plaintiff was behind in his training "due to his past military service and perceived PTSD". (Doc. 1-2, ¶ 29). Plaintiff was re-assigned to a new trainer who trained him for six days. (Doc. 1-2, ¶ 32). Plaintiff alleges that his new trainer observed and reported that Plaintiff had the requisite knowledge to do his job and that he had been treated differently. (Doc. 1-2, ¶ 33). A supervisor allegedly noted that Plaintiff was behind the training schedule, that he would be a "burden", and that he was a "major safety risk". (Doc. 1-2, ¶ 34). Plaintiff was terminated on December 5, 2015. (Doc. 1-2, ¶ 35). Defendant denies that Plaintiff's PTSD, real or perceived, and/or his military service played a role in his termination. (Doc. 14-1, pp. 6, 9, and 10).

Plaintiff alleges that a post-termination investigation revealed that Mobile "doctored" his notes regarding Plaintiff's perceived PTSD. (Doc. 1-2, ¶ 36).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 31, 2016, and the EEOC mailed a "Right to Sue" letter on April 27, 2017, which was received on May 1, 2017. (Doc. 1-2, ¶ 37).

Plaintiff originally filed suit in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, and the suit was removed to the United States District Court for the Middle District of Louisiana on November 2, 2017. (Doc. 1). Plaintiff originally plead causes of action pursuant to the Louisiana Employment Discrimination Law based on age and disability discrimination, (Doc. 1-2, ¶ 41), and the Louisiana Military Service Relief Act because Plaintiff's past military service and perceived PTSD were motivating factors behind his termination, (Doc. 1-2, ¶ 42).

Defendant filed a motion to dismiss pursuant to Rule 12 on December 11, 2017. (Doc. 5). The Court ruled on March 27, 2018, that Plaintiff's claims pursuant to state law were dismissed; however, the Court found that Plaintiff had stated a claim pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). (Doc. 12). Defendant now brings the instant motion for summary judgment under Rule 56, seeking to dismiss Plaintiff's claims pursuant to USERRA. (Doc. 14).

## II.     Relevant Standard

### A.     Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations and internal quotations omitted). The party opposing the motion for summary judgment may not sit on his hands, complacently relying on the pleadings. *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. General allegations that fail to reveal detailed and precise facts will not prevent

the award of summary judgment.  *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### B.     Motion to Strike

Motions to strike are generally disfavored and infrequently granted due to the fact that they are a drastic remedy and are often used as a dilatory tactic. *FDIC v. Niblo,* F.Supp. 441, 449 (N.D. Tex. 1993)(citing *Augustus v. Bd. of Pub. Instr. of Escambia County, Florida,* 306 F2d 862, 868 (5th Cir. 1962)). *See also Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982). Motions to strike "should only be granted when the pleading to be stricken has no possible relation to the controversy." *Augustus,* 306 F.2d at 868 (*quoting Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). "A motion to strike should be denied if there is any disputed question of fact." *Joe Hand Promotions, Inc. v. HRA Zone, L.L.C.*, 2013 WL 5707813 at 2(W.D. Tex. 2013) (citing *Augustus*, 306 F.2d at 868). Finally, when considering a Rule 12(f) motion, the court has "ample" discretion. *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979).

## III.    Discussion

### A.     Parties' Arguments

#### 1.     Defendant's Memorandum in Support (Doc. 14-1)

Defendant argues that Plaintiff "lacks any evidence" that his military service was a motivating factor in Defendant's decision to terminate his employment.  (Doc. 14-1, p. 13).

5

Defendant points to Plaintiff's testimony, arguing that Plaintiff "admits he was not treated differently by Mobile because he served in the military". (*Id.* (citing Doc. 14-2, pp. 72-73)). Plaintiff testified:

> Q.    Do you have any reason to believe that the fact that you had served in the United States Marine Corps had anything to do with the way in which David Mobile conducted your computer-based training?
>
> A.    I do.
>
> Q.    Okay.  What?
>
> A.    I believe, at that point, David Mobile had made up in his mind that he didn't want me in the unit.
>
> Q.    Because of your military service?
>
> A.    Yes.
>
> Q.    Okay.  So what leads you to believe that David Mobile didn't want you in the unit because of your military service?
>
> A.    Because he was making notes about PTSD and had made comments about PTSD.
>
> Q.    Okay.  So I want to make a distinction here.  Did you think that David Mobile was concerned about your PTSD being a problem for you being employed with ExxonMobil?
>
> A.    Yes.
>
> Q.    Okay.  Did you think that David Mobile was concerned about the fact that you had served in the United States military being a problem with your employment at ExxonMobil?
>
> A.    No.

(Doc. 14-2, pp. 72-73, l. 3).

Defendant also argues that Plaintiff admitted that Mobile did not have any concerns about his military service, (Doc. 14-1, p. 13 (citing Doc. 14-2, p. 43)); that Mobile did not make comments about Plaintiff serving in the military, (*id.* (citing Doc. 14-2, p. 57)); that there are no

allegations that Kenneth Gregorie, a supervisor in Plaintiff's unit, made negative comments about Plaintiff's military service or that it played a role in Plaintiff's evaluations, (*id*. (citing Doc. 14-3, ¶ 30)); and that there are no allegations that Daniel Underwood, a supervisor in Plaintiff's unit, made negative comments about Plaintiff's military service or that it was a consideration in terminating Plaintiff, (*id*. (citing Doc. 14-5, pp. 168, 171, 178, 243-44; Doc. 14-8, ¶ 5)).

Defendant argues that the factors to be considered in assessing a USERRA claim have not been met: (1) "[T]he proximity in time between Cain's military service in 2007 and his termination eight years later in 2015 … negates any inference of discrimination", (*id*. (citing *Colvin v. Lowndes Cty*., No. 09-187, 2011 WL 767158, *2 (N.D. Miss. Feb. 25, 2011)("Plaintiff's military service occurred three years prior to her termination, and she has produced no evidence indicating that this prior service was a 'motivating or substantial factor' in the decision to fire her, as required in USERRA cases.")); (2) Defendant's proffered reason for termination, Cain's "failure to qualify for the high pressure post", is consistent with Defendant's actions in providing additional training, additional trainers, allowing additional time to qualify for the post, documenting the inability to retain information and inability to understand unit processes, (Doc. 14-1, p. 14 (citations omitted)); (3) Defendant expressed no hostility towards the military, maintained policies prohibiting discrimination against veterans, hired individuals who served in the military, and hired Plaintiff with knowledge of his military service, (*id*. (citations to evidence omitted)(citing *Gill v. Petroleum Co-Ordinators, Inc*., No. 14-02869, 2016 WL 4574169, *5 (W.D. La. Aug. 31, 2016)(an employer's written policy evidenced respect for the military and that it did not have a discriminatory animus)(citing *Williamson v. Bon Secours Richmond Health Sys*., 34 F.Supp.3d 607, 616 (E.D. Va. 2014)(that the employer hired the known military plaintiff twice)); and (4)

Plaintiff failed to show disparate treatment of non-military employees compared to military employees. (Doc. 14-1, p. 15 (citations omitted)).

Defendant also argues that it would have discharged Plaintiff for failure to qualify on the high pressure post regardless of whether he served in the military. (Doc. 14-1, p. 15). Despite efforts, Plaintiff was "nowhere near being able to qualify for the high pressure post after two months of BOT and four months of training". (Doc. 14-2, p. 16). Defendant cites to deposition testimony and declarations of witnesses attesting to Plaintiff's purported inability to retain information and learn the post, as well as the extra efforts and training purportedly offered by Defendant to Plaintiff to make every effort for him to learn his unit. (Doc. 14-1, pp. 15-18). Defendant concludes that it had a legitimate, non-discriminatory reason for discharging Plaintiff, regardless of his military service. (Doc. 14-1, p. 18).

Finally, Defendant argues that in order to succeed on a USERRA discrimination claim, Plaintiff must show that his termination was due to his military status. Plaintiff's allegations of PTSD or perceived PTSD attributed to military service "cannot form the basis for a discrimination claim under USERRA". (Doc. 14-1, p. 18 (citing *Felton v. City of Jackson*, No. 18-74, 2018 WL 2994363 (S.D. Miss. June 14, 2018); *Bennett v. Dall. Indep. Sch. Dist.*, 936 F.Supp.2d 767 (N.D. Tex. 2013)).

### 2.    Plaintiff's Opposition (Doc. 18)

Plaintiff argues that during his training on the high-pressure post, he was dedicated to learning the information he needed to learn even if his trainer had to tell him "two or three times". He then joked and stated that the lack of retaining information may be due to "the medicine that they gave me when I was in the war." (Doc. 18, p. 5 (citing Doc. 14-2, p. 51)). Plaintiff claims that as a result of this joke, Mobile, his trainer, "immediately started treating Cain differently

because of his past military service". (*Id.*). Plaintiff claims that Mobile "became concerned", and the joke "drew a red flag" with Mobile. (Doc. 18, pp. 5-6 (citing Doc. 14-6, p. 70)). Plaintiff also argues that Mobile "irrationally assumed that Cain suffered from post-traumatic stress disorder … that he associated with Cain's past military service". (*Id.* (citing Doc. 14-6, p. 73)). Mobile admitted that Cain was "capable of coming out there and shooting everybody based on past military service. (*Id.* (citing Doc. 14-6, p. 74)). Plaintiff argues that Mobile became fearful and told his supervisors that Plaintiff suffered from PTSD. Plaintiff argues that Mobile then failed to train Plaintiff, which led to Plaintiff's termination. (Doc. 18, p. 6).

Plaintiff argues that the only element of his USERRA claim that is in dispute and at issue in Defendant's motion is whether Plaintiff's past military service was a motivating factor behind his termination. Plaintiff argues that there are genuine issues of material fact for trial by jury, and the motion should be denied. (Doc. 18, p. 8).

Plaintiff argues that Defendant's claim that Plaintiff was terminated because of an inability to learn the job is "baseless". Plaintiff argues that he was not trained to perform the job, as "demonstrated by the Cain's BOT evaluation summaries and the testimony of Broderick Brown, a trainer who stepped in during one of the periods when Mobile was not available to train Cain. Brown's testimony not only reveals Mobile's true motivation in neglecting Cain's training, but also validates Cain's knowledge and preparedness to perform the job for which he was hire[d]." (Doc. 18, p. 9 (citing Doc. 18-2, pp. 100-108)). Brown testified that: in all of his conversations with Plaintiff's supervisors, no one ever commented that Plaintiff was unable to retain information, (Doc. 18-2, pp. 101-103); it was Brown's understanding that there was a disagreement between Mobile and Plaintiff and Mobile "checked out", (Doc. 18-2, p. 103); Mobile refused to train Plaintiff, (*id.*); Mobile was not giving Plaintiff the help that he needed, (Doc. 18-2, p. 105); Brown

began training Plaintiff and he wanted to learn and had a good understanding of what he needed to know, (*id.*); Plaintiff had everything Brown looks for in an apprentice, (Doc. 18-2, p. 107); and, Plaintiff drew the entire unit from memory which is something no one has ever had to do, (Doc. 18-2, p. 116).

### 3. Defendant's Reply (Doc. 23)

In reply, Defendant re-iterates that the "caselaw unequivocally establishes that a military injury [such as PTSD] cannot form the basis for discrimination under USERRA". Plaintiff fails to refute "the caselaw". Therefore, Defendant argues, summary judgment should be granted. (Doc. 23, p. 1).

Defendant argues that Plaintiff fails to address the USERRA standard of "motivating factor" and the *Gill* factors for assessing whether military service was the "motivating factor" for termination. Defendant posits that this is because Plaintiff lacks evidence to support a motivating factor. (Doc. 23, p. 2).

Defendant directly refutes that Mobile considered Plaintiff a threat to the facility, citing to Mobile's testimony where he disputed ever saying that Plaintiff "might snap". (*Id.* (citing Doc. 14-6, p. 77)). Defendant argues that Mobile did not attribute Plaintiff's challenges in learning the job to PTSD; rather Mobile attributed it to "having trouble remembering things". (Doc. 23, p. 3 (citing Doc. 14-6, p. 84)).

Defendant argues that Plaintiff first testified that Mobile did not have concerns about Plaintiff's military service and now attests by declaration that he is not aware of Mobile verbalizing concerns about Plaintiff's military service. Defendant argues that Plaintiff is qualifying his testimony and that Plaintiff fails to evidence a discriminatory animus. (Doc. 23, p. 3).

Defendant's final argument is that Plaintiff cannot refute that Defendant would have terminated his employment even if he had not been in the military. Defendant argues that Plaintiff's evidence of positive reviews by Brown and positive training evaluations are not "well-supported" and cannot refute the extensive evidence offered by Defendant showing that Plaintiff had an inability to learn necessary information. (Doc. 23, p. 4). Also, Defendant argues that Plaintiff's evidence of a lack of training does not show that it was based on a discriminatory animus. (Doc. 23, pp. 4-5).

### 4.      Plaintiff's Sur-Reply (Doc. 28)

Plaintiff states that "but for" his military service, Defendant would not have "branded him" as a "threat" based on the assumption that he suffers from PTSD. (Doc. 28, p. 1). Plaintiff clarifies that he is not making a claim based on a disability of PTSD. In fact, Plaintiff confirms that he does not have PTSD, nor did he tell anyone that he has PTSD. His claim is that his employer discriminated against him by assuming he was "defective goods" because of his military service. Plaintiff argues that this causal link – because of his military service – is what makes his cause of action under USERRA. (Doc. 28, p. 2).

Plaintiff attempts to distinguish Defendant's cited case, *Felton v. City of Jackson*. First, the plaintiff in *Felton* brought a claim under Section 4312 of USERRA, not Section 4311. This claim is not one of discrimination, but accommodation. Second, Plaintiff argues that the *Felton* plaintiff failed to allege a causal link between his PTSD and military service, which Plaintiff argues here. (Doc. 28, pp. 2-3). Plaintiff makes the same argument with regard to *Bennett v. Dallas Indep. School Dist.* (Doc. 28, n. 4).

Plaintiff argues that Defendant is asking the Court to make credibility determinations, which is improper on summary judgment. Plaintiff argues that Defendant's reply brief only

highlights the genuine issues of material fact that should be left to a jury. Plaintiff quotes Mobile's deposition regarding his belief that those with PTSD due to being in the military "kill people" and may "shoot everybody"; that it raised a "red flag"; and that he learned this from the news. (Doc. 28, p. 3 (citing Doc. 14-6, pp. 72-75)). Plaintiff argues that this testimony "cuts straight to the heart of the matter" and shows discriminatory animus related to former military personnel. (Doc. 28, p. 4). At a minimum, Plaintiff argues that the testimony reveals an issue that must be left for the jury.

Plaintiff argues that Defendant's challenges to his abilities to perform the job are a pretext – Defendant wanted Plaintiff gone. (Doc. 28, p. 4). Plaintiff points to the information and tasks that he was asked to master that others were not, like drawing the unit in one sitting. (*Id*.). Plaintiff points out that Defendant's reply brief does not refute the testimony of Brown. Plaintiff argues that Defendant should not be allowed to defend Plaintiff's claim of discrimination by relying on the testimony of those who failed to train him. Plaintiff argues that USERRA requires that military personnel be treated the same as non-military personnel. (Doc. 28, p. 5 (citing *Rogers v. City of San Antonio*, 392 F.3d 758, 764 (5th Cir. 2004)). Plaintiff concludes that the record reveals issues that cannot be decided on summary judgment "without wading into the province of the jury" and must proceed to a jury trial.

### B.     Applicable Legal Authority

The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq., was adopted in 1994 as the first significant modification in protection of veterans' employment rights in 50 years. *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 544 5th Cir. 2013)(citing "Veterans' Law Note," ARMY LAWYER 40 (Dec. 1994)). Almost eleven

years after the enactment, the Department of Labor adopted regulations pursuant to its statutory authority. 38 U.S.C. § 4331(a); 20 C.F.R. §§ 1002.1-1002.314.

USERRA creates a comprehensive statutory scheme to provide civilian reemployment rights for those who serve in the armed forces in order "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." *Smith v. U.S. Postal Serv.,* 540 F.3d 1364, 1366 (Fed.Cir.2008) (quoting 38 U.S.C. § 4301(a)). The Act also aims "to minimize the disruption to the lives of persons performing service," and "to prohibit discrimination against persons because of their service." *Id.* Section 4311 of USERRA generally prohibits employment discrimination and retaliation against a person who served in a uniformed military service. Sections 4312 and 4313 generally provide rights of reemployment and benefits for a person who was required to be absent from employment for military service. Sections 4311 and 4312 provide distinct causes of action. *Bradberry,* 732 F.3d at 545 (citing *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 303 (4th Cir. 2006)). The statute should be "liberally construed" for the protection and benefit of military service members. *Mayeaux v. Houston Independent School Dist.,* 986 F.Supp.2d 842, 847 (S.D. Tex. Apr. 3, 2014)(citing *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980)).

Section 4311 provides that a servicemember "shall not be denied … reemployment, retention in employment, … or any benefit of employment" because of the person's military service. 38 U.S.C. § 4311(a). An employer will violate this prohibition when "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in an employment decision. 38 U.S.C. § 4311(c)(1).

By referring to a "motivating factor," the statute does not textually suggest that military service be the sole factor.  *Mayeaux*, 986 F.Supp.2d at 847 (citing *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002)("By requiring a plaintiff to show that his or her military service was a 'motivating factor' behind an adverse employment action, Congress replaced the Supreme Court's interpretation of USERRA's predecessor statute, under which an employee's military status was required to be 'the sole motivation for the employer's action.'").  A Department of Labor regulation states that a plaintiff "has the burden of proving that a status of activity protected by USERRA was one of the reasons" for the employer's decision.  20 C.F.R. § 1002.22.  The employer, though, is not liable under USERRA if it "can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service."  38 U.S.C. § 4311(c)(1).  The regulation elaborates on this provision: "If the individual succeeds in proving that the status or activity protected by USERRA was one of the reasons the employer took action against him or her, the employer has the burden to prove the affirmative defense that it would have taken the action anyway."  20 C.F.R. § 1002.22.

The circuit courts have been "unanimous in adopting the 'substantial or motivating factor' test, rather than the 'sole motivating factor' test".  *Mayeaux,* 986 F.Supp.2d at 847 (citing *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 16 (1st Cir. 2007); *see also, Gummo v. Vill. Of Depew, N.Y.,* 75 F.3d 98, 106 (2nd Cir. 1996)).  Under this test, "military service is a motivating factor for an adverse employment action if the employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation."  *Mayeaux*, 986 F.Supp.2d at 847 (citing *Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009)).  If "one reason for the employer's actions was [an employee's]

'membership, service, application for service, or obligation for service in the uniformed services,' then that reason was a motivating factor." *Bradberry*, 732 F.3d at 551.

If the plaintiff establishes that his or her military service was a motivating factor in her termination, the defendant may nonetheless "escape liability by showing by a preponderance of the evidence, as an affirmative defense, that it would have made the same decision" without regard to the plaintiff's military status. *Mayeaux*, 986 F.Supp.2d at 848 (citing *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F.Supp. 571, 576 (E.D. Tex. 1997); *see* 38 U.S.C. § 4311(c)(1)(placing burden on employer to prove that action would have been taken in absence of military status). Therefore, in contrast with Title VII cases analyzed under the McDonnell Douglas framework in which the burden remains on the plaintiff to show pretext, in USERRA cases "the burden [is] on the employer to show lack of pretext." *Mayeaux*, 986 F.Supp.2d at 848 (citing *Velazquez-Garcia*, 473 F.3d at 16). "Obtaining judgment as a matter of law on this type of affirmative defense is an 'uphill climb' for [the defendant if the plaintiff] can demonstrate that a jury could find that [his or] her military absences were a motivating factor in [his or] her termination." *Mayeaux*, 986 F.Supp.2d at 848 (citing *De La Garza v. Brumby*, 2013 WL 754260, at *6 (S.D. Tex. Feb. 27, 2013)). "Once a plaintiff makes that showing, a defendant can only succeed at the summary judgment stage by showing that the same jury that could find military [service] were a motivating factor would have to find that such [service] was not the motivating factor." *Mayeaux*, 986 F.Supp.2d at 848.

In cases where a supervisor with antimilitary animus is not the final decision-maker, courts must consider whether the supervisor's intent motivated the adverse employment action. *Wright v. City of Horn Lake, Miss.*, 63 F.Supp.3d 651, 655 (N.D. Miss. Oct. 21, 2014)(citing *Bradberry*, 732 F.3d at 551). "[I]f a supervisor performs an act motivated by antimilitary animus that is

intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA". *Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S.Ct. 1186, 1194, 179 L.Ed.2d 144 (2011).

**C.  Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence**

Defendant seeks to strike certain testimony contained in Plaintiff's declaration offered in opposition to the motion for summary judgment because it "contradicts Cain's prior admissions and/or is speculative, is without factual basis, is not based on personal knowledge, and is unsubstantiated, subjective, conclusory, or immaterial". (Doc. 24, p. 1).  The four statements from Plaintiff's declaration that Defendant moves to strike are:

1.    "Mobile[2] assumed that I suffered from post-traumatic stress disorder."  (Doc. 19-3, ¶ 30);

2.    "Mobile wrote in his notes several times about me and PTSD." (Doc. 19-3, ¶ 31);

3.    "I never heard Mobile 'verbalizing' any concerns about my military service."  (Doc. 19-3, ¶ 33); and

4.    "Mobile refused to train me on the high-pressure post."  (Doc. 19-3, ¶ 35).

(Doc. 24-1, pp. 1-2).

The party opposing summary judgment is obliged to set forth specific facts which demonstrate a genuine issue for trial. FRCP 56; Local Rule 56.2.  When the nonmovant "fails to direct the Court to specific evidence in the record to controvert the supporting evidence set forth by the [movant] … the fact is deemed admitted pursuant to Local Rule 56.2." *Antoon v. Woman's Hospital Foundation d/b/a Woman's Hospital*, 2012 WL 1094715, *2 (M.D. La. May 30, 2012).

Conclusory statements without proper support do not meet the requirements of Rule 56(e). *See Goodman v. Life Ins. Co. of North America*, 244 F.3d 138 (5th Cir. Dec. 15, 2000)(citing *Boyd*

---

[2] "Mobile" refers to David Mobile, who was Plaintiff's trainer on the high pressure post.

*v. State Farm Ins. Cos*., 158 F.3d 326, 331 (5th Cir. 1998); *Duffy v. Leading Edge Products, Inc*., 44 F.3d 308, 312 (5th Cir. 1995)("Although we consider the evidence in the light most favorable to the nonmoving party, … conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment.")(internal citations omitted); and *Galindo v. Precision American Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985)); *See also Miller Exploration Co. v. Energy Drilling Co*., 130 F.Supp.2d 781, 785 (W.D. La. Jan. 3, 2001).

"Rule 56(e) requires declarations offered in support of summary judgment to be based on personal knowledge." *Bright v. Ashcroft*, 259 F.Supp.2d 494, 498 (E.D. La. Feb. 11, 2003)(citing Fed.R.Civ.P. 56(e); *Akin v. Q-L Invs., Inc*., 959 F.2d 521, 530 (5th Cir. 1992)). Rule 602 of the Federal Rules of Evidence further requires a submitting party to lay a proper foundation that witnesses have personal knowledge of the matter about which they will testify. "[A] court may strike any affidavit that is not based on personal knowledge." *Bright,* 259 F.Supp.2d 494, 498 (5th Cir. 2003)(citing *Akin*, 959 F.2d at 530; *CMS Indus., Inc. v. L.P.S. Int'l, Ltd*., 643 F.2d 289, 295 (5th Cir. 1981)). To demonstrate personal knowledge, an affidavit "must include enough factual support to show that the affiant possesses that knowledge." *Thomas v. Atmos Energy Corp*., 223 Fed.Appx. 369, 374 (5th Cir. 2007).

The Court addresses each of these four challenges in turn.

> 1. **"Mobile assumed that I suffered from post-traumatic stress disorder."**
> **(Doc. 19-3, ¶ 30).**

Defendant characterizes Paragraph 30 of Plaintiff's declaration as "speculation about Mobile's motivations and beliefs" and argues that this statement is "inadmissible and immaterial". (Doc. 24-1, p. 2). Defendant argues that because Plaintiff has no personal knowledge of the motivations or beliefs he ascribes to Mobile and did not lay a proper foundation for this statement, that it is speculative and inadmissible. In response, Plaintiff argues that Defendant's challenges to

Plaintiff's testimony by declaration should be reserved for trial when the witness can be cross-examined on the stand. (Doc. 29, p. 3). Plaintiff also argues that his challenged statements regarding PTSD are based on first-hand observations and are fully supported by his prior deposition testimony. (Doc. 29, pp. 4-5, citing to Doc. 18-1, pp. 52-55).

When considered solely in the context of the declaration, the attestation that Mobile "assumed" that Plaintiff suffered from post-traumatic stress disorder does not lack foundation and factual support. While Plaintiff declared that Mobile "assumed" he had PTSD, Plaintiff also explained that he never said or joked about having PTSD; he does not suffer from PTSD; and, he is not on any medication as a result of war or other activity related to military service. (Doc. 19-3, ¶¶ 32, 34). It is reasonable to conclude from this factual support and foundation that Mobile made an assumption, and the basis for Plaintiff's impression and observation that there was an assumption made. The Court agrees with Plaintiff that the declaration does not contradict his prior deposition testimony. Therefore, the Court denies Defendant's motion to strike Paragraph 30 of Plaintiff's declaration.

### 2. "Mobile wrote in his notes several times about me and PTSD." (Doc. 19-3, ¶ 31).

First, the Court notes that Defendant does not dispute the fact that Mobile "documented in his notes Cain's alleged comment about PTSD", that Mobile made notes about his communications with his supervisors about the comment, and that "three notations" were made "over a two-week period". (Doc. 24-1, p. 6 (citing Doc. 14-7, ¶ 5)). Defendant's challenge to Paragraph 31 of Plaintiff's declaration is based primarily upon the representation by Plaintiff of the frequency of Mobile making notations about Plaintiff.

Defendant argues that "Cain incorrectly suggests that Mobile frequently documented Cain's PTSD in his notes". (Doc. 24-1, p. 6). Defendant first equates Plaintiff's statement of

"several times" to "frequently" and then argues that frequent notations are contrary to Mobile's deposition testimony which "unequivocally shows" that Mobile made notations three times in two weeks. (*Id.* (citing Doc. 14-7, ¶ 5)).

Plaintiff opposes Defendant's motion to strike this statement based upon the fact that Cain observed Mobile make the notations and the statement was based on his personal knowledge. (Doc. 29, p. 6). In reply, Defendant agrees that Mobile documented "PTSD three times" in two weeks, but disagrees that "this amounts to several times". (Doc. 30, p. 5).

As all parties agree that Paragraph 31 of Plaintiff's declaration does not contradict Plaintiff's deposition testimony and is based on Plaintiff's observations, as well as Defendant's admission and supporting deposition testimony that Mobile testified to making these notations "three times", the Court denies Defendant's motion to strike Paragraph 31 on the grounds that the attestation is contrary to prior deposition testimony. The Court now turns to Defendant's second challenge to Paragraph 31.

Defendant also seeks to strike Paragraph 31 on the grounds that the statement is immaterial. Defendant argues that the statement is immaterial because PTSD cannot form a basis for discrimination under USERRA, Mobile did not participate in the decision to terminate Plaintiff, and PTSD was not considered in the decision to terminate Plaintiff. (Doc. 24-1, p. 6 (citing *Felton,* 2018 WL 2994363; *Bennett*, 936 F.Supp.2d 767). Plaintiff does not address this argument in his opposition.

Here, Plaintiff is alleging that Defendant discriminated against him by terminating him based on his "past military service and perceived PTSD". (Doc. 1-2, ¶ 42). The argument advanced by Plaintiff is that upon learning of his military service, Defendant associated PTSD

with military service. Plaintiff then alleges that this perception grew and became an alleged motivation to terminate his employment.

Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. C. Wright & Miller, 5C Fed. Prac. & Proc.3d § 1382. Immateriality is established by showing that the challenged allegations, "can have no possible bearing upon the subject matter of the litigation." *Bayou Fleet Partnership, LLC v. St. Charles Parish,* No. 10–1557, 2011 WL 2680686, at *5 (E.D.La. Jul.8,2011). For purposes of Defendant's motion to strike, it is not necessary for the Court to address the strength or substance of Plaintiff's claims. However, the statement that Defendant made notes of Plaintiff's perceived PTSD is relevant to Plaintiff's claim that Defendant perceived him to suffer from PTSD, which Defendant allegedly associated with his military service and allegedly motivated the termination of his employment. Considering Defendant does not deny that notations were made of PTSD and specifically admits that other evidence, deposition testimony, supports that notes were made of PTSD, there is no evidence that the declaration has "no possible bearing upon the subject matter of this litigation". The Court finds the statement sufficiently material to the pending motion for summary judgment and denies Defendant's motion to strike Paragraph 31.

### 3. "I never heard Mobile 'verbalizing' any concerns about my military service." (Doc. 19-3, ¶ 33).

Defendant argues that Plaintiff testified at his deposition that he did "not remember [Mobile] having any concerns" about his service in the United States Marine Corps. Plaintiff also testified that he did not "think that David Mobile was concerned about the fact that [he] had served in the United States military". (Doc. 24-1, p. 5 (citing Doc. 14-2, pp. 43, 72-73)). Defendant argues that Paragraph 33 of Plaintiff's declaration "downplays" this testimony and is "contrary" to the deposition testimony and should be stricken. (Doc. 24-1, pp. 5-6).

Plaintiff characterizes Defendant's argument as "nit-picking" and argues that there is "no contradiction to speak of". Plaintiff defines "contradict" in his opposition as "to express the opposite of" or "to deny the statement of". Plaintiff makes a common-sense argument that adding the word "verbalizing" is not inconsistent with not recalling any indication of a concern. Plaintiff argues that the declaration clarified the testimony. (Doc. 29, pp. 6-7).

The Court has found guidance in two district court cases, which rely on Fifth Circuit case law. In *Sandras v. Freeport-McMoran,* 889 F.Supp. 901 (E.D.La.1995), the court was faced with "a genuine contradiction of fact" and reasoned that "the fact that the conflict arises between plaintiff's deposition and his own affidavit is of no moment, for the Fifth Circuit has instructed that a court must consider all evidence before it on a motion for summary judgment, 'including affidavits that conflict with deposition testimony.'" *Id.* at 903 (citing *Dibidale v. American Bank & Trust Co.,* 916 F.2d 300, 307 (5th Cir.1990)). The court went on to state that "a genuine issue of material fact may be raised by such an affidavit even if it conflicts with earlier testimony in the party's deposition." *Id.* (internal quotations and citations omitted). Likewise, in *Ramos v. Geddes,* 137 F.R.D. 11 (S.D.Tex.1991), the court noted:

> Not every discrepancy between an affidavit and prior deposition testimony indicates a sham and use of an affidavit to clarify a deponent's confusion during a deposition is appropriate. To the extent there is confusion or contradiction between ... deposition testimony and [an] affidavit, they present credibility issues that are properly put to the trier of fact. A genuine issue of fact can be raised by an affidavit even if it conflicts with earlier deposition testimony by the same person.

*Id.* at 12 (internal citations omitted). *See also, Legier and Materne v. Great Plains Software, Inc.,* 2005 WL 1400398, *2 (E.D. La. June 2, 2005)("The reason for the change given by Ms. Lind was that she could not remember exactly which product lines were included in the search without reading the … query. Ms. Lind's original testimony … does not contradict the reason provided."); *Innovative Marketing & Technology v. Norm Thompson Outfitters, Inc.,* 171 F.R.D. 203, 204

(W.D. Tex. 1997)(where the court denied the defendant's motion to strike the errata sheets where reasons for changes were to clarify, to correct a misstatement, or to correct a response because the deponent did not understand the question.).

Based on the aforementioned reasoning and case law, this Court agrees with Plaintiff and will deny the motion to strike Paragraph 33.

4. **"Mobile refused to train me on the high-pressure post." (Doc. 19-3, ¶ 35).**

Defendant argues that Plaintiff speculates "about Mobile's motivations and beliefs" in Paragraph 35 and that the statement is not based upon personal knowledge. (Doc. 24-1, p. 3). Additionally, Defendant argues that the statement is immaterial "because ExxonMobil undisputedly provided Cain with another trainer and had several individuals (not including Mobile) evaluate Cain who concluded that he did not have sufficient knowledge and understanding of the OXO unit to qualify for the high-pressure post." (Doc. 24-1, p. 4).

Plaintiff opposes the motion and denies speculation or "read[ing] Mobile's mind". Based on Plaintiff's observations, "there was clearly an effort by Mobile – based on his conduct – to ignore or disregard Plaintiff's training". (Doc. 29, p. 5). Plaintiff quotes portions of Plaintiff's deposition testimony purportedly reflecting Plaintiff's observations of Mobile related to training. (Doc. 29, p. 5 (citing Doc. 18-1, p. 70 (Mobile would rush through training, would leave the room, and would skip portions); p. 64 (Plaintiff received different and less training than others)). Plaintiff concludes that his testimony is consistent with his declaration.

In reply, Defendant argues that Paragraph 35 is "immaterial" because other trainers were assigned to Plaintiff and Plaintiff did not "get it". (Doc. 30, pp. 2-3).

Again, as discussed with regard to the notes on PTSD, the issue before the Court on a motion to strike is whether Paragraph 35 has any possible bearing on the motion for summary

judgment.  *Bayou Fleet Partnership, supra.*  Also, the Court is to consider all evidence before it on summary judgment and is not to make a credibility determination.  *Dibidale, supra*; Rule 56. In considering the statement regarding a refusal to train in Paragraph 35 of Plaintiff's declaration, the Court finds the statement to have bearing on the motion for summary judgment; however, the Court finds the statement lacking in foundation.  The declaration, without scouring the transcripts of other deposition testimony, does not provide a sufficient factual context or evidence Plaintiff's personal knowledge and observations.  Plaintiff refers the Court to deposition testimony that informs the statement in Paragraph 35; however, within the context of the declaration itself, an insufficient foundation exists.  Rule 602 of the Federal Rules of Evidence requires a submitting party to lay proper foundation that witnesses have personal knowledge of the matter about which they will testify.  *See, e.g., Robertson v. Corval Constructors, Inc*., 2015 WL 1650367, *3 (M.D. La. Apr. 14, 2015)(where this Court found that the attestation lacked foundation because it did not provide in the declaration the sufficient factual background to support the statement).  For these reasons, the Court will grant Defendant's motion to strike Paragraph 35.

###   D.   Analysis

Plaintiff argues that the motivating factor of his termination was Defendant's unfounded belief that he had PTSD due to his military service.  Plaintiff argues that because he was assumed to be "defective goods" due to his military service and due to Mobile's association of individuals that could kill people due to military-induced PTSD, Plaintiff was intentionally not trained and was set up to be terminated.  (Doc. 28, pp. 1-2; Doc. 14-6, pp. 72-75).  Defendant disputes this characterization and raises the legal issue that caselaw does not support a USERRA claim based on PTSD, even if the PTSD is related to military service.  (Doc. 23, p. 1).  The Court first considers

Defendant's legal argument that a military injury cannot be the basis of discrimination under USERRA and the caselaw regarding same before evaluating the offered evidence by both parties.

In *Felton v. City of Jackson, Mississippi*, *supra*, one of the two cases upon which Defendant primarily relies, the plaintiff complained that the defendant refused to accommodate him when he developed a work-related disability, which had its genesis in his military service. The *Felton* court immediately noted that the plaintiff did not allege or attempt to allege a claim for discrimination in violation of USERRA. The claim failed because the plaintiff did not allege that the defendant discriminated against him because of his prior military service. Rather, the plaintiff alleged that the defendant discriminated against him on account of PTSD which he alleged was contributed to by his military service. The *Felton* court cited to *Carroll v. Delaware River Port Authority*, 89 F.Supp.3d 628 (D.N.J. 2015), for the proposition that a "USERRA plaintiff has the initial burden of demonstrating that his military service, as distinct from a disability resulting from service, was a substantial or motivating factor in the employer's decision." *Felton*, at *4.

Here, Plaintiff has specifically invoked Section 4311 of USERRA and has unequivocally denied that he alleges a disability, PTSD or otherwise. (Doc. 28, p. 2). He has also specifically alleged discrimination due to past military service, unlike in *Felton*. (Doc. 1-2, ¶ 42). In *Felton*, which was before that court on a Rule 12 motion to dismiss, the primary flaw in plaintiff's complaint was his failure to plead discrimination and/or its relationship to military service. Plaintiff is not arguing PTSD as a result of military service, as in *Felton*. Indeed, Plaintiff denies he has PTSD. Rather, Plaintiff is arguing that Defendant associated his prior military service with PTSD and being unstable, a negative and incorrect association. Plaintiff argues that the consideration of his past military service in a negative and detrimental fashion is discriminatory

under USERRA. Therefore, the Court finds that *Felton* lends little guidance to the specific issue before the Court.

Defendant also directs the Court to *Bennett v. Dall. Indep. Sch. Dist.* in which the plaintiff was a police officer who took leave from his job, served in the Army, suffered a knee injury and PTSD, returned to his employment, and was placed in a position with a more limited scope of work. The plaintiff filed suit, bringing claims under the Americans with Disabilities Act and USERRA. With regard to the plaintiff's argument under Section 4311 of USERRA, the employer argued that it was entitled to summary judgment because the plaintiff failed to establish that his military service was a motivating factor in his re-assignment from police officer to security guard. The employer claimed that it re-assigned the plaintiff because he could not physically fulfill the functions of the police officer position, and when his physical status improved, the plaintiff refused to undergo a necessary psychological evaluation. The plaintiff pointed to evidence of the employer making biased statements about veterans' psychological fitness, evidence of resentment for the plaintiff seeking to return to the police officer position, and evidence of disparate treatment. The *Bennett* court found that the plaintiff failed to introduce evidence that would enable a reasonable jury to find that his military service was a motivating factor in the employer's decisions regarding his reassignments and termination. "Although [the plaintiff] was injured and developed PTSD during his military service, [the plaintiff] points to no evidence that [the employer's] decisions regarding his employment were related to his protected status as a member of the military". *Bennett*, 936 F.Supp.2d at 788.

Again, in *Bennett*, the plaintiff actually suffered from PTSD. There, it was Bennett's alleged disability of PTSD that was the subject of the alleged discrimination, as distinguished from his military service being the subject of the discrimination. Here, Plaintiff denies an injury or

disability. He is arguing that he was discriminated against due to a mistaken association of past military service with a psychiatric condition. The military service did not cause a disability that was the basis of the claim; the preconceived notion about military servants was the basis of the claim.

Although the ultimate findings of the *Bennett* court mirror the conclusion sought by Defendant in this matter, the *Bennett* ruling does not support a rule that Plaintiff cannot prevail on a claim of discrimination under Section 4311 of USERRA founded on the argument that Defendant discriminated against him based, in part, on an assumption that because Plaintiff served in the military he had PTSD and was a safety risk.

The Court notes that USERRA is to be "liberally construed". *Mayeaux*, 986 F.Supp.2d at 847 (citing *Coffy*, 447 U.S. at 196). Military service need only be one of the factors in the employer's decision, and it is sufficient for the employer to "consider" military service. *Mayeaux*, 986 F.Supp.2d at 847 (citing *Erickson*, 571 F.3d at 1368); *Bradberry*, 732 F.3d at 551.

In *Mayeaux*, the plaintiff was a teacher and an active member of the National Guard. While at a National Guard training, the plaintiff missed an in-school training on fundraising. Some time thereafter, the plaintiff was under investigation for mis-handling funds related to fundraising activities. After the investigation, she was terminated. She filed suit asserting claims under USERRA. Defendant moved for summary judgment, arguing that they were in an at-will state, the plaintiff violated financial procedures, and she was terminated for these reasons. The *Mayeaux* court agreed; however, the court identified a problem for defendant.

While *Mayeaux* did not address PTSD or any military-related disability, it did examine what a "motivating factor" in a USERRA discrimination case means. In *Mayeaux*, the parties focused extensively on the fact that a fundraising violation is not a basis for a USERRA claim, just

as PTSD alone is not a basis for a USERRA claim. But, the *Mayeaux* court stated that this is where the "problem arises" – there was direct evidence of her military service playing a factor in the decision, along with the fundraising violation, which is not acceptable under USERRA. *Mayeaux*, 986 F.Supp.2d at 848.

There is rarely direct evidence of discriminatory animus. Employers are generally careful to avoid statements that suggest discriminatory intent, whether their true intentions are discriminatory or not. *Mayeaux*, 986 F.Supp.2d at 849. Here, the evidence shows that Mobile made notes, gave deposition testimony, and expressed concerns to his supervisors regarding Plaintiff's perceived PTSD due to military service and associated safety concerns. The suggestion here, as argued by Plaintiff, is that Mobile believed former military personnel have PTSD and are a safety risk. In other words, linking military service with irrational behavior, a purported discriminatory association. Even if this belief is not accurate, it serves as evidence of a discriminatory animus towards former military personnel and Plaintiff specifically.

In *Mayeaux*, when the military leave was considered in conjunction with derogatory comments, missed fundraising training, and the financial mis-handling, the court concluded that a jury could find that military service was a factor in the termination of the plaintiff. The *Mayeaux* court addressed the issue of evidence of discriminatory intent as set forth above. *Mayeaux*, 986 F.Supp.2d at 849 (citing *Hoffman v. Caterpillar, Inc*., 256 F.3d 568, 571, 576 (7th Cir. 2001)(employer's statement that he denied the plaintiff training because she only had one hand was evidence of discrimination); *Woodhouse v. Magnolia Hosp*., 92 F.3d 248, 254 (5th Cir. 1996)(employer's statement that he would lay off the "old people" was evidence of discrimination); *Burns v. Gadsden State Cmty. Coll*., 908 F.2d 1512, 1518 (11th Cir. 1990)(where the statement that "no woman" would be named to the position was evidence of discrimination).

Similarly, when Plaintiff's "joke" of medication while serving in the military, Mobile's reaction, Mobile's assumption, Mobile's notes, Mobile's testimony regarding those with PTSD shooting people, and Mobile's report to his supervisors are all considered, a jury may find a military-based discriminatory animus that influenced Plaintiff's termination.

The Court finds that there is no rule that a purported discriminatory animus based on military service cannot be a factor to support a USERRA claim, although there is little in the way of legal support for the argument. Because the Court does not find sufficient support for the argument that Plaintiff does not have a viable claim under Section 4311 of USERRA, the Court turns to the record evidence on summary judgment to determine whether there is evidentiary support that Plaintiff's military service was a motivating factor in Defendant's termination of his employment. The initial burden is on Plaintiff to show that his military service was a motivating factor in Defendant's decision to terminate his employment. 20 C.F.R. § 1002.22; *Bradberry*, 732 F.3d at 545.

Discriminatory motivation under USERRA "may be inferred from a variety of considerations, including but not limited to, the proximity in time between military service and the adverse employment action, inconsistencies between the employer's proffered reason for the action and other actions of the employer, an employer's expressed hostility toward members of the military, and disparate treatment of nonmilitary employees as compared to employees who are service members." *Gill v. Petroleum Co-Ordinators, Inc.*, No. 14-02869, 2016 WL 4574169, *4 (W.D. La. Aug. 31, 2016)(citing *Coffman v. Chugach Support Services*, 411 F.3d 1231, 1238 (11th Cir. 2005). Plaintiff must only show that his military status was one of the considerations for Defendant's action. *Gill*, at *4 (citing *Bradberry*, 732 F.3d at 545).

Applying the *Gill* factors to this matter, there was a gap in time between Plaintiff's military service and his apprenticeship with Defendant. However, Plaintiff offers evidence of inconsistencies in Defendant's actions, (Doc. 1-2, ¶¶ 17-22; Doc. 28, pp. 4-5); expressed hostility by Mobile related to assumed PTSD due to military service resulting in Plaintiff shooting co-workers, (Doc. 1-2, ¶¶ 14-15; Doc. 14-6, pp. 70-75); and arguments that other apprentices were treated differently than Plaintiff. (Doc. 1-2, ¶¶ 17-22; Doc. 28, pp. 4-5; Doc. 18-2, pp. 100-108). It remains unclear from the record before the Court whether the other apprentices were military or not and whether Defendant knew of the other co-workers' military or non-military status. Also, the Court notes that the *Gill* factors are an illustrative list. Plaintiff is not precluded from making other arguments and offering other evidence in support of showing a discriminatory motivation.

Here, Plaintiff offered evidence that as a result of his "joke" about taking medicine in the military, Mobile, his trainer, "immediately started treating [him] differently because of his past military service"; that Mobile "became concerned", and the joke "drew a red flag", (Doc. 14-6, p. 70); that Mobile "irrationally assumed that [he] suffered from post-traumatic stress disorder … that he associated with [his] past military service", (Doc. 14-6, p. 73); that Mobile admitted that Cain was "capable of coming out there and shooting everybody" based on past military service, (Doc. 14-6, p. 74); that Mobile became fearful and told his supervisors that Plaintiff suffered from PTSD; and that Mobile then failed to train Plaintiff, which eventually led to Plaintiff's termination. (Doc. 18, p. 6). Plaintiff argues that he was not trained to perform the job, and that Broderick Brown's testimony, a second trainer, supports Plaintiff's argument that Mobile had a problem with Plaintiff and that Plaintiff was prepared and able to work in the unit. (Doc. 18-2, pp. 100-108). Plaintiff points to Mobile's testimony as evidence of his discriminatory animus related to former military personnel. (Doc. 28, p. 4).

Mobile did not make the decision to terminate Plaintiff; however, Mobile admits in his deposition that he feared for everyone's safety with regard to Plaintiff and documented the PTSD comments and reported it to his supervisors. Mobile's supervisors ultimately terminated Plaintiff. In cases where a supervisor with antimilitary animus is not the final decision-maker, courts must consider whether the supervisor's intent motivated the adverse employment action. *Wright v. City of Horn Lake, Miss.*, 63 F.Supp.3d 651, 655 (N.D. Miss. Oct. 21, 2014)(citing *Bradberry*, 732 F.3d at 551). "[I]f a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA". *Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S.Ct. 1186, 1194, 179 L.Ed.2d 144 (2011).

Plaintiff argues that Mobile had a discriminatory animus and wanted Plaintiff terminated. Plaintiff points to Brown's testimony in support of this belief. (Doc. 18, p. 9 (citing Doc. 18-2, pp. 100-108)). Plaintiff argues that Mobile then reported his feelings about Plaintiff to his supervisors, which influenced their opinions. Defendant admits that Mobile reported his feelings about Plaintiff to his supervisors, but it is unclear whether this influenced the supervisors decision to terminate Plaintiff. (Doc. 14-6, pp. 56-61). Defendant offered the declarations of Mobile's supervisors and their deposition testimony, reflecting that their decision was not based on Plaintiff's military service or Mobile's assumptions and feelings related to Plaintiff's military service. The supervisors testified that Plaintiff was terminated because he could not perform the job. (Doc. 14-3, ¶ 30; Doc. 14-5, pp. 168, 171, 178, 243-44; Doc. 14-8, ¶ 5). Plaintiff argues that there is an issue of fact as to whether the adverse employment decision was actually influenced by Mobile's biases, as evidenced by Brown's testimony, which was favorable to Plaintiff and that the supervisors purportedly ignored. (Doc. 18, p. 9).

Defendant maintains that there is no evidence of a motivation based on Plaintiff's military service: Plaintiff admitted that Mobile did not have any concerns about his military service, (Doc. 14-2, p. 43); that Mobile did not make comments about Plaintiff serving in the military, (Doc. 14-2, p. 57); that there are no allegations that Kenneth Gregorie, a supervisor in Plaintiff's unit, made negative comments about Plaintiff's military service or that it played a role in Plaintiff's evaluations, (Doc. 14-3, ¶ 30); and that there are no allegations that Daniel Underwood, a supervisor in Plaintiff's unit, made negative comments about Plaintiff's military service or that it was a consideration in terminating Plaintiff, (Doc. 14-5, pp. 168, 171, 178, 243-44; Doc. 14-8, ¶ 5). Defendant directly contests that Mobile considered Plaintiff a threat to the facility. (Doc. 14-6, p. 77).

It seems clear to the Court that the supervisors who ultimately terminated Plaintiff's employment were not motivated independently by a discriminatory animus based on Plaintiff's military service. However, there are issues of material fact as to whether the adverse employment decision was influenced by Mobile. One trainer, Brown, testified that Mobile had a problem with Plaintiff, and Plaintiff testified that Mobile made comments that he might shoot his co-workers due to presumed PTSD that Mobile assumed he had due to military service. Other supervisors, Gregorie and Underwood, testified that Plaintiff's military service and Mobile's concerns related to Plaintiff had no bearing on the decision to terminate his employment. These issues of fact call for a credibility determination that is inappropriate for summary judgment.

Further, Mobile's own deposition testimony reflects that he had concerns about Plaintiff and safety related to PTSD. He admits that he made notes related to these concerns and that he took his concerns to his supervisors. There is an issue of material fact as to whether Plaintiff said he had PTSD or not and regarding his comments about military service. Plaintiff testified that he

joked about medication during his military service and Mobile "immediately assumed" he had PTSD from military service and immediately became concerned and treated him differently. Mobile testified that Plaintiff said he had PTSD, which became the basis of Mobile's concerns. Again, it is for the jury to determine whether they find Plaintiff or Mobile more credible and whether they find that military service was immediately linked to PTSD or not.

All of the evidence set forth above supports a reasonable inference that Plaintiff's military service was considered and motivated his termination. While the Court notes that there is sparse direct evidence of a discriminatory animus based on the traditional notion of "military service", the Court cannot ignore the evidence of Mobile's association between military service and PTSD, which could be found by a jury to be discriminatory in nature. Also, the Court cannot ignore the conflict in witness testimony that allows for a credibility call between Mobile and Plaintiff. This is simply a role the Court cannot fill on summary judgment. The Court finds genuine issues of material fact preclude granting Defendant's motion.

Defendant urges an affirmative defense that Plaintiff would have been terminated regardless of his military service because he could not pass his training, learn his unit, and therefore do the job of assistant operator. While this defense is supported by record evidence, there are, nonetheless, issues which preclude summary judgment. As set forth above, it is difficult to prevail on summary judgment on an affirmative defense. *Mayeaux*, 986 F.Supp.2d at 848 (citing *De La Garza v. Brumby*, 2013 WL 754260, at *6 (S.D. Tex. Feb. 27, 2013)). Here, there are also issues of fact with regard to whether Plaintiff was required to learn information and pass tests that other apprentices were not required to learn to take; whether other apprentices were in the military or not; whether Plaintiff's evaluations were considered to be "passing" or not, all of which would evidence whether Defendant's affirmative defense has merit or not. There is conflicting testimony

between Plaintiff, Brown, Mobile, and other supervisors as to whether Plaintiff sufficiently learned the necessary information, i.e., the same information required of other apprentices, to pass the training. It is possible that a jury will find disparate treatment of Plaintiff in his training, which set him up for failure and termination. It is possible that a jury will find Brown's anticipated trial testimony more credible, that Plaintiff was treated unfavorably, asked to learn information that others were not required to, that Plaintiff knew the information, and that Plaintiff could do the job. When the evidence is construed in a light most favorable to the plaintiff, there remain disputed issues of material fact on Defendant's affirmative defense, which precludes summary judgment.

Where questions of material fact exist as to the elements of a claim under USERRA, it is proper to deny the motion for summary judgment. *See Mayeaux,* 986 F.Supp.2d 842 (where genuine issues of material fact precluded dismissal of the plaintiff's claims under Section 4311 of USERRA); *Grooms v. Dogencorp, LLC*, 2019 WL 2342688 (N.D. Miss. June 3, 2019)(where Defendant's motion for summary judgment on Plaintiff's Section 4312 USERRA claim was denied based on questions of material fact); *Sumrall v. Ensco Offshore Company*, 2018 WL 2088761 (S.D. Miss. May 7, 2018)(where cross motions for summary judgment on Plaintiff's Section 4312 USERRA claim were denied based on genuine issues of material fact); *Gill*, 2016 WL 4574169 (where summary judgment was denied based on genuine issues of material fact with regarding to the Section 4312 claim under USERRA; Plaintiff failed to plead a Section 4311 discrimination claim in the complaint and therefore the Section 4311 claim was dismissed on summary judgment as it was not before the court); *Wright v. City of Horn Lake, Miss.*, 63 F.Supp.3d 651 (N.D. Miss. Oct. 21, 2014); *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F.Supp. 571 (E.D. Tex. May 22, 1997).

For the foregoing reasons, Defendant's motion for summary judgment is denied.

IV.    **Conclusion**

Accordingly,

**IT IS ORDERED** that *Defendant Exxon Mobil Corporation's Motion for Summary Judgment,* (Doc. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that *Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence* (Doc. 24) is **GRANTED in part and DENIED in part**.

Signed in Baton Rouge, Louisiana, on August 26, 2019.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**